UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 2 5 2014
```

Anarosa Peguero-Miles,

                Plaintiff,

--v--

City University of New York, *et al.*,

                Defendants.

13-CV-1636

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

Before the Court is the Defendants'[1] motion to dismiss Plaintiff's Third Amended Complaint. In her Complaint, Plaintiff brings state-law claims under New York's Human Rights Law ("NYSHRL"), city-law claims under New York City's Human Rights Law ("NYCHRL"), and federal-law claims under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and 42 U.S.C. §§ 1981 and 1983. Plaintiff also brought a claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 1985, against Defendant Professional Staff Congress/CUNY, but she voluntarily dismissed this claim.[2] Dkt. No. 50. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

I.    BACKGROUND

The following facts are drawn from Plaintiff's Complaint, and are presumed true and construed in Plaintiff's favor on this motion to dismiss. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

---

[1] The remaining Defendants include: City University of New York Borough of Manhattan Community College; State University of New York Manhattan Educational Opportunity Center; Rodney Alexander; Angela Rita-Farias; and Walida Najeeullah.

[2] Plaintiff also made allegations of slander suggesting a claim on that basis under New York state law, but clarified in her opposition papers that she "did not file a complaint of slander under New York State" law. Opp. at 16.

1

Plaintiff describes herself as a "bilingual, dark skinned, petite Dominican woman." Compl. at 14. She began working for the State University of New York Manhattan Educational Opportunity Center ("MEOC"), which is administered by the City University of New York ("CUNY"), in December 2009 as a Food Stamp Employment and Training Job Developer in the Counseling Department. Compl. at 15. The Counseling Department was managed at the time by Defendant Angela Rita-Farias. In February 2010, Plaintiff assumed the duties of the MEOC Career Job Developer and was then officially appointed to that position from April 2010 through August 2010. Compl. at 15.[3] For a brief period of time in August 2010, she reported to both the Counseling Department, managed by Rita-Farias, and the Research Department, managed by Steven Jacobs. Compl. at 15. By the end of August 2010, she reported only to Jacobs and retained the title of Job Developer. Compl. at 15. As a Job Developer, Plaintiff's duties included training students to find suitable work, conducting resume and cover letter writing workshops, cultivating relationships with various employers, and finding employment for students. Compl. at 15. She received two satisfactory performance evaluations from Jacobs on February 22, 2011 and Rita-Farias on June 14, 2010. Compl. at 15, 39.[4]

Plaintiff alleges that during her employment at the MEOC, she was subjected to numerous discriminatory remarks and adverse employment actions after she complained about these comments. She provides a long list of statements allegedly attributed to Rita-Farias and other MEOC employees that derogatively discuss Plaintiff's national origin[5] and race[6] as well as

---

[3] Plaintiff's Complaint states that these dates occurred in 2011, but this is inconsistent with other facts alleged in Plaintiff's Complaint, and so the Court assumes that this was a typographical error; Defendants' moving papers also suggest that the relevant dates stated here occurred in 2010. Def. BR. at 4.
[4] Plaintiff attached what appears to be a satisfactory performance evaluation dated January 24, 2011 rather than February 22, 2011.
[5] *See, e.g.,* Compl. at 17 ("I hate Dominicans. Dominicans talk too much shit and are full of shit. All the time."); ("I don't like them, I hate them.");
[6] *See, e.g.,* Compl. at 18 ("N***ers don't know shit; that is why they come to me."); ("N***ers and Dominicans are ignorant."); Compl. at 20 ("You are a voodoo doll, because a voodoo doll is black.").

2

others' national origin,[7] race, and religion[8]. The exact chronology of Plaintiff's complaints regarding these comments is unclear, but she alleges that she may have made her first "informal" complaint about Rita-Farias's comments in August 2010, Compl. at 6, which is around the time her supervisor changed from Rita-Farias to Jacobs. Plaintiff alleges that she lodged additional complaints at various times to the following individuals: Defendant Rodney Alexander, the Executive Director of the MEOC; Jacobs; Sadie Bragg, Borough of Manhattan Community College ("BMCC") Vice President; Iyana Titus, BMCC's Affirmative Action Counselor; Defendant Walida Najeeullah, MEOC's Operations Coordinator; and union representatives. Compl. at 16, 20, 26.[9] Plaintiff further alleges that other MEOC employees made similar complaints to Alexander, including Renetta Mason, Steve Elson, and Jannet Rivera, and that Alexander failed to address any of the complaints until after Plaintiff raised her complaints with Titus. Compl. at 27. According to Plaintiff's Complaint, Rivera was not reappointed five months after she filed a complaint and she later settled a case of retaliation filed against CUNY. Compl. at 20.

Plaintiff alleges that she was shut out of Rita-Farias's inner circle after she complained about discrimination and a hostile work environment and was similarly shut out of certain work projects and committees. Compl. at 20. She also claims that shortly thereafter, Alexander came to her and told her that "I hear you're making comments about discrimination. We don't discriminate here at the MEOC. Come on, stop saying those things." Compl. at 26.

The exact sequence of events leading to Plaintiff's termination is less than clear, but the chronology as provided in Plaintiff's Complaint appears to be as follows. On or about February 10, 2011, Plaintiff had a meeting with Alexander, Najeeullah, and Jacobs at which she allegedly stated that she was a victim of discrimination. Compl. at 26. On February 25 or 28, 2011,

---

[7] *See, e.g.,* Compl. at 19 (referring to those of Caribbean origin, "Arlene Broome should go to school to get rid of that accent"); ("Peruvians are like Dominicans. They always cheat on their girls.").
[8] *See, e.g.,*, Compl. at 19 ("Erick Neutuch is just a fucking kiss ass Jewish boy . . ."); ("I dated one of them and he only cared about money.").
[9] Plaintiff alleges that she filed complaints on numerous dates ranging from January 13, 2010 through March 25, 2011. Compl. at 27-29.

3

Alexander sent to Plaintiff an email detailing "several troubling incidents" and complaints about Plaintiff's behavior. Compl. at 34; Rodriguez Decl. Ex. E. Then on March 3, 2011, Plaintiff had a meeting with Alexander to discuss the issues raised in the email. Compl. at 29; Rodriguez Decl. Ex. F. Plaintiff alleges that she then met with Titus on March 11, 2011 to file a complaint of discrimination. Compl. at 29. On March 15, 2011, Alexander issued a memo reminding Plaintiff to treat her colleagues with civility and forbearance. Compl. at 29. On March 17, 2011 Plaintiff's husband was escorted off MEOC premises, and on March 25, 2011, Plaintiff was placed on administrative leave before she was terminated on July 1, 2011. Compl. at 29. Thus, she alleges that two weeks after she filed a formal complaint she was effectively terminated. Compl. at 23. Plaintiff also alleges that Rita-Farias had some part in Alexander's decision not to reappoint Plaintiff. Compl. at 16. Defendants allegedly initially told Plaintiff on July 1, 2011 that she was terminated because of budget cuts, but on September 8, 2011, the Defendants allegedly changed their position and informed Plaintiff that she was refused reappointment because of a series of "troubling incidents." Compl. at 13.

On April 4, 2011, Plaintiff filed a Complaint with the New York State Department of Human Rights. Compl. at 9; Rodriguez Decl. Ex. C at 1. Following a hearing at which witnesses testified, the administrative law judge made factual findings and concluded that in light of the evidence, Defendants "credibly showed that Complainant's employment was terminated because of Complainant's behavior towards her co-workers." Rodriguez Decl. Ex. C at 1. The DHR endorsed the administrative law judge's findings on September 28, 2012. Rodriguez Decl. Ex. D at 2. At some point, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which closed its case on Plaintiff's claim because the "EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." Compl. at 12. The EEOC then issued to Plaintiff a right-to-sue letter on December 12, 2012, Compl. at 12, and Plaintiff timely filed this suit on March 11, 2013 within 90 days of receiving that letter, Dkt. No. 2.

## II. LEGAL STANDARD

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Krassner*, 496 F.3d at 237. Thus, factual allegations are presumed true, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Further, [the Court] must interpret the factual allegations of a *pro se* complaint 'to raise the strongest arguments that they suggest.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010)).

Claims for employment discrimination are analyzed under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires a plaintiff to first establish a *prima facie* case of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004)). But "[t]he Supreme Court has held . . . that 'the requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)). Rather, plaintiffs need only satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a) as interpreted by the Supreme Court's holdings in *Twombly* and *Iqbal* to survive a motion to dismiss. *Barbosa v. Continuum*

5

*Health Partners, Inc.*, 716 F. Supp. 2d 210, 214-15 (S.D.N.Y. 2010) (discussing the interplay of *Swierkiewicz*, *Twombly*, and *Iqbal*). Nonetheless, "the elements of the *prima facie* case [still] 'provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible,'" and so "courts 'consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests.'" *Cruz v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 13 Civ. 1335 (AJN), 2014 U.S. Dist. LEXIS 77428, at *5-6 (S.D.N.Y. June 4, 2014) (quoting *Henry v. NYC Health & Hosp. Corp.*, No. 13 Civ. 6909 (PAE), 2014 U.S. Dist. LEXIS 32821, at *9-10 (S.D.N.Y. Mar 10, 2014)).

Finally, "[a] court may take judicial notice of 'the status of other lawsuits in other courts and the substance of papers filed in those actions.'" *Peoples v. Fischer*, No. 11 Civ. 2694 (SAS), 2012 U.S. Dist. LEXIS 62428, at *12 (S.D.N.Y. May 3, 2012) (quoting *Schenk v. Citibank/Citigroup/Citicorp*, No. 10 Civ. 5056, 2010 U.S. Dist. LEXIS 130305, at *5 (S.D.N.Y. Dec. 9, 2010)); *see also Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000) (taking judicial notice of final judgment entered and notice of appeal in state court).

### III. DISCUSSION

#### A. State- and City-Law Claims

Plaintiff brings claims for discrimination, retaliation, and hostile work environment under the NYSHRL and the NYCHRL. However, Plaintiff already brought these same claims before a state administrative body in the form of the New York State Department of Human Rights. *See* Compl. at 9; Rodriguez Decl. Ex. B (Department of Human Rights Verified Complaint); Ex. C. (Recommended Findings of Fact, Opinion and Decision, and Order); Ex. D. (Notice and Final Order). Plaintiff does not contest the fact that she raised these claims before the Department of Human Rights, only that she should not be barred from bringing them now.

6

New York Executive Law § 297(9) and the New York City Administrative Code 8-502(a) both provide private rights of action for unlawful discriminatory practices; indeed, the provisions are essentially identical. *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002). The State's statute and the City's code also contain an election-of-remedies provision, which has been consistently interpreted as barring the commencement of an action in court after a party has filed a complaint with the Department of Human Rights concerning the same discrimination, unless the complaint was dismissed for administrative convenience. *Id.* (citing *Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995)). "Furthermore, there is no question that the election-of-remedies provisions at issue here apply to federal courts as well as state." *Id.* (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).

Because Plaintiff elected to bring her state- and city-law claims for discrimination before the Department of Human Rights as an initial matter, she is barred by the very terms of the statute and code creating those claims from bringing them before this federal court now. *Id.*; *Moodie*, 58 F.3d at 882. More accurately, the election-of-remedies provision has been interpreted as a jurisdictional bar that deprives courts of jurisdiction to hear a case where a complaint was previously filed before the Department of Human Rights. *Moodies*, 58 F.3d at 884. And "a state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim." *Moodie*, 58 F.3d at 884 (citations omitted). Having concluded that this Court lacks jurisdiction to hear Plaintiff's state- and city-law claims based on the election-of-remedies provision, the Court need not address Defendants' alternative argument that she also failed to satisfy the notice of claim requirements under the statute and code.

### B.   Federal Claims

Plaintiff also brings federal claims under Title VII and Sections 1981 and 1983 for discrimination on the basis of race and national origin, hostile work environment, and retaliation.

Plaintiff's federal claims are analyzed under similar frameworks and so are discussed together unless otherwise noted. *See, e.g., Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (noting that "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause." (citing *Whidbee*, 223 F.3d at 69 (§ 1981); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (§ 1983); *Sorluco v. N.Y. City Police Dep't*, 888 F.2d 4, 6-7 (2d Cir. 1989) (same)). The Court concludes that Plaintiff alleges sufficient facts to state each of these claims and finds Defendants' arguments to the contrary unavailing.

### 1.   Employment Discrimination

A *prima facie* case of employment discrimination requires the plaintiff to "show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). As noted above, Plaintiff need not actually establish her *prima facie* case at the motion to dismiss stage, but the elements to be proven at trial will guide the Court's determination as to whether she alleges sufficient factual matter to give Defendants fair notice of her claim and the ground on which it rests.   Defendants acknowledge that Plaintiff alleges she "is a member of a protected class on the basis of her color and national origin, performed her job duties satisfactorily as a Job Developer and that she was terminated from her position at MEOC." Def. Br. at 14. But Defendants contend Plaintiff fails to state a claim upon which relief can be granted because she alleges no circumstances giving rise to an inference of discrimination for three reasons.

First, Defendants contend no inference of discrimination can be found since the decisionmaker responsible for terminating Plaintiff's employment is of the same protected class as Plaintiff. As a factual matter, Defendants only contend that the decisionmaker who terminated

Plaintiff, Alexander, is African-American, not that he is of Dominican national origin. Thus, Alexander is not in the exact same protected class as Plaintiff. Moreover, the case relied on by Defendants, *Tucker v. New York City*, merely states that an inference of discrimination is undermined by the fact that the decisionmaker is of the same protected class as Plaintiff. No. 05 Civ. 2804 (GEL), 2008 U.S. Dist. LEXIS 76900, at *14 (S.D.N.Y. Sept. 30, 2008) (citing *Fosen v. N.Y. Times*, No. 03-CV-3785 (KMK)(THK), 2006 U.S. Dist. LEXIS 75662, at *14 (S.D.N.Y. Oct. 11, 2006)). Regardless of whether an inference is or is not undermined, the fact that Plaintiff was of the same protected class as the decisionmaker who terminated her is not dispositive. For example, courts have recognized the "cat's paw" theory of discrimination under which "an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision." *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1189 (2011). Under such a theory, "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable" for employment discrimination. *Staub*, 131 S.Ct. at 1194 (internal footnotes omitted). Here, Plaintiff alleges facts indicating that her former supervisor, Rita-Farias, demonstrated racial and national origin animus and that individuals other than Alexander were responsible for the complaints against her in the "Troubling Issues Memo," which appears to have been Alexander's primary basis for terminating Plaintiff. Thus, the fact that Alexander is African-American does not foreclose Plaintiff's claims at this stage.

Second, Defendants cite authority from other circuits for the proposition that Plaintiff's claim fails to raise an inference of discrimination because she does not allege "with particularity" when various discriminatory comments were made. Def. Br. at 15 (citing *Grasty v. World Flavors, Inc.*, No. 11-1778, 2011 U.S. Dist. LEXIS 89277, *16 (E.D. Pa. Aug. 11, 2011); *Thomas v. Pocono Mountain School Dist.*, No. 3:10-CV-1946, 2011 U.S. Dist. LEXIS 65792, at *16 (M.D. Pa. June 21, 2011)). But Defendants cite no authority from this Circuit, nor is the

9

Court aware of any such authority, that would support a heightened pleading requirement necessitating the dates and times when allegedly discriminatory remarks occurred. In fact, the Second Circuit expressly held that "'the Federal Rules do not contain a heightened pleading standard for employment discrimination suits.'" *Kassner*, 496 F.3d at 237 (quoting *Swierkiewicz*, 534 U.S. at 514-15). Here, Plaintiff detailed a number of discriminatory comments allegedly made by Rita-Farias and other MEOC employees. On a motion to dismiss, she is not required to state the exact dates and times when such comments were made. In any event, the Court notes that Plaintiff's allegations would likely still satisfy the "particularity" requirement stated in the cases the Defendants rely on. *See Grasty*, 2011 U.S. Dist. LEXIS 89277, at *16-17 (finding that plaintiff satisfied particularity requirement where plaintiff "avers that his supervisors referred to him as 'little black boy' and 'little black guy' on multiple occasions"); *Thomas*, 2011 U.S. Dist. LEXIS 65792, at *16 (stating that "pleader may be able to show [that he faced discrimination] by particularly alleging (for example) who made specific comments in which evaluation, and stating the content of the comment").

Third, Defendants argue that Plaintiff fails to allege an inference of discrimination because Rita-Farias hired Plaintiff and was once social with her. It is true that the Second Circuit has noted discrimination may be unlikely where, for example, "the person who made the decision to fire was the same person who made the decision to hire," and that "[t]his is especially so when the firing has occurred only a short time after the hiring." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (collecting cases). But *Grady* and the case relied on by Defendants were decided at the summary judgment stage, not a motion to dismiss. The fact that Plaintiff was hired and fired by the same person may make an inference of discrimination less likely, not implausible. Moreover, unlike the plaintiff in *Grady*, Plaintiff worked for more than a year before she was fired, thus weakening any inferential force of this fact.

In sum, Defendants acknowledge that Plaintiff is a member of a protected class, performed her job duties satisfactorily, and was terminated from her position at MEOC, and they offer no convincing arguments as to why she alleges no circumstances giving rise to an inference

of discrimination. Therefore, Defendants' motion to dismiss Plaintiff's claims of employment discrimination are DENIED.

### 2. Retaliation

To make out a *prima facie* case of retaliation, Plaintiff must show "(1) participation in a protected activity known to Defendants; (2) an adverse employment action; and (3) a causal connection between the two." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 341 (S.D.N.Y. 2009) (collecting cases). Protected activity covers any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Plaintiff alleges that she complained about Rita-Farias's discriminatory conduct on several occasions and, more concretely, that she informed Alexander, Najeeullah, and Jacobs that she was the victim of discrimination on or about February 10, 2011 and was then placed on administrative leave on or about March 25, 2011 before being terminated on July 1, 2011. Compl. at 26, 29. It is plausible that a termination coming so close on the heels of a complaint is causally connected to the complaint. *See, e.g., Sulehria v. City of N.Y.*, 670 F. Supp. 2d 288, 307 (S.D.N.Y. 2009) ("Plaintiff may establish a causal connection either directly, through proof of retaliatory animus, or indirectly, through circumstantial evidence that, for example, the adverse action followed close on the heels of the protected activity, or that the employer also took adverse action against other employees who engaged in protected conduct." (citing *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

In response, Defendants contend only that "the [Complaint] itself and documents it attaches and incorporates by reference provide a credible, non-discriminatory explanation [for] Plaintiff's termination which critically undermines Plaintiff's theory of retaliation." Def. Br. at 17. But, again, undermining a theory of retaliation is not the same as failing to state a claim for retaliation. Moreover, Defendants primarily point to the "Troubling Issues" memo detailing complaints about Plaintiff's behavior as undermining her theory of retaliation. Plaintiff alleges,

11

however, that the events detailed in the "Troubling Issues" memo were fabricated by Najeeullah after Plaintiff complained of discrimination. Plaintiff's allegation, which the Court must accept as true on a motion to dismiss, thus counters Defendants' only argument against her retaliation claim.

Therefore, because Plaintiff states sufficient facts to allege a claim of retaliation, the Defendants' motion to dismiss her claims of retaliation is DENIED.

### 3. Hostile Work Environment

To establish a claim for hostile work environment, a Plaintiff must establish that "(1) she is a member of a protected class; (2) she suffered unwelcome harassment; (3) she was harassed *because of her membership in a protected class*; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Caban v. City of N.Y.*, No. 11 Civ. 3417 (SAS), 2012 U.S. Dist. LEXIS 170981, at *11-12 (S.D.N.Y. Nov. 30, 2012) (citing *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008)).

Defendants do not dispute that Plaintiff sets forth sufficient facts to support a claim for hostile work environment. Rather, Defendants cite *Frieson v. NASDAQ/AMEX Mkt. Grp.*, No. 96 Civ. 7102 (WK), 2001 U.S. Dist. LEXIS 2665, at *4 (S.D.N.Y. Mar. 14, 2001), for the proposition that Plaintiff must plead discriminatory statements with specificity to state a claim for hostile work environment. But in *Frieson*, Judge Knapp held that a plaintiff failed to state a claim for hostile work environment where "[a]ll plaintiff states is that she overheard numerous racially insensitive remarks. She does not identify a single remark nor the person(s) who uttered any of them." 2001 U.S. Dist. LEXIS 2665, at *4. Plaintiff, in contrast, points to dozens of remarks on an ongoing basis made by Rita-Farias that pejoratively discuss Plaintiff's race and national origin, as well as the race, national origin, and religion of others.[10] Plaintiff further alleges that after she first began to complain about these comments, Rita-Farias responded by

---

[10] See footnotes 6-9 for a sample of the many comments that Plaintiff alleges were made.

essentially shunning Plaintiff, removing her from certain work-related committees, and excluding her from certain projects. Furthermore, when she complained to Alexander, he allegedly told her to stop complaining. Thus, the facts that Plaintiff alleges are sufficient to plausibly state a claim for hostile work environment. *See, e.g., Awad v. City of N.Y.*, No. 13 Civ. 5753, 2014 U.S. Dist. LEXIS 63234, at *20-21 (E.D.N.Y. 2014) (denying motion to dismiss hostile work environment claim based on allegations that supervisor made harassing and discriminatory comments, such as comparing Egyptian plaintiff to terrorists, over course of two years and excluded plaintiff from certain projects and meetings); *Patterson v. Xerox Corp.*, 732 F. Supp. 2d 181, 191-92 (W.D.N.Y. 2010) (denying motion to dismiss hostile work environment claim based on plaintiff's allegations of repeated racial, sexual, and ethnic statements including expressing a dislike for people of plaintiff's gender and race); *see also La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 210-11 (2d Cir. 2010) (reversing motion to dismiss where plaintiff alleged, inter alia, racial comments from coworkers and then, following complaint to human resources, was told his complaint was not "sufficient" and had his workload doubled).

Therefore, because Plaintiff pleads sufficient facts to put Defendants on notice of her claims and the grounds on which they rest, Defendants motion to dismiss Plaintiff's claims for employment discrimination, retaliation, and hostile work environment under Title VII is DENIED. The above analysis applies equally to Plaintiff's claims under Sections 1981 and 1983 except insofar as discussed in Part III.B.4.

### 4. Additional Arguments Regarding Plaintiff's Claims under Sections 1981 and 1983

As noted above, Plaintiff's claims under Sections 1981 and 1983 overlap substantially with her Title VII claims, but Defendants raise separate arguments specific to Sections 1981 and 1983 that the Court addresses here. *See, e.g., Patterson*, 375 F.3d at 225-27 (describing the ways in which claims under Sections 1981 and 1983 differ from Title VII claims).

First, Defendants correctly point out that to succeed on a claim under Sections 1981 and 1983, Plaintiff must establish that the discrimination was intentional. *Id.* at 226. But a finding of "invidious discriminatory purpose may often be inferred from the totality of the relevant facts," *Washington v. Davis*, 426 U.S. 229, 242 (1976), and Plaintiff alleges sufficient relevant facts to set forth a plausible claim of intentional discrimination based on her allegations of racially and ethnically charged statements and an adverse employment action following complaints regarding those statements. Moreover, "[s]uch a finding may [also] be supported by evidence that the defendant has given conflicting reasons for its treatment of the plaintiff," *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) (citations omitted), and Plaintiff alleges that Defendants initially indicated they fired her for budgetary reasons and then changed the reason to complaints about her unprofessional behavior. Compl. at 13.

Second, Defendants contend that Plaintiff cannot state a claim under Section 1983 against the individual defendants because she does not allege that they acted under color of state law. Def. Br. at 21. "A person acts under color of state law when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gonzalez v. Kahan*, No. CV 88-922 (RJD), 1996 U.S. Dist. LEXIS 22715, at *5 (E.D.N.Y. Nov. 27, 1996) (quoting *Polk County v. Dodson*, 454 U.S. 312, 317 (1981)). Plaintiff alleges that individuals employed by CUNY used their position to discriminate against her. Because CUNY is an institution of New York State, its employees may be clothed with the color of state law. *See, e.g., id.* at *5 ("As a result of his employment relationship with CUNY, an institution of New York State, Professor Kahan's actions as a tenured University professor are clothed with the color of state law"). Defendants offer no authority to support their argument to the contrary other than to suggest that Plaintiff did not use the magic phrase "under color of state law." While it is true that "mere employment by the state does not mean that the employee's every act can properly be characterized as state action," *Patterson*, 375 F.3d at 230 (citation omitted), and it may well be the case that the particular legal structure of the MEOC or the individual Defendants' roles within the organization provide a legal basis to refute the claim that

14

they were acting under color of state law, Defendants offer no such arguments in their motion to dismiss.

Third, Defendants assert that Plaintiff's Section 1983 claim against CUNY and MEOC fails because she offers no facts tending to show that any of the alleged discriminatory conduct occurred due to an official policy or custom as required by *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). Def. Br. at 21. "To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Patterson*, 375 F.3d at 226 (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Rather, "[i]t is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* (internal quotation marks and citations omitted). Moreover, "[a] policy, custom, or practice may be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Id.* (quoting *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996)).

Defendants argue that "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)). But their contention that Plaintiff merely asserts a custom or policy without any factual details is inaccurate. Plaintiff's Complaint alleges widespread and persistent discriminatory comments coming from her supervisor, numerous complaints to senior officials that went unheeded—including an allegation that Alexander, MEOC's Executive Director, told her to stop complaining—and similar complaints made by colleagues, including one who was subsequently fired. The Second Circuit has recognized that a policy or custom "may be inferred from the informal acts or omissions of supervisory municipal officials," and, moreover, "inaction such as the persistent failure to discipline subordinates who violate persons' civil rights could give rise to an inference

15

of an unlawful municipal policy of ratification of unconstitutional conduct." *Id.* (internal citations and quotation marks omitted); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). For example, the Second Circuit recently affirmed a jury verdict based on testimony from plaintiff that he suffered "frequent and severe" discriminatory comments and harassment from coworkers over a period of time and that his complaints to supervisors went unheeded. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 63 (2d Cir. 2014). The Second Circuit concluded that "the continuation of the harassment in several forms over time certainly supports the reasonableness of the conclusion that [the supervisor's] 'fail[ure] properly to investigate and address allegations' of harassment allowed for 'the conduct [to] become[] an accepted custom or practice of the employer.'" *Id.* at 63 (quoting *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994)). Assuming, as the Court must on a motion to dismiss, that, as alleged, Plaintiff's employer disregarded complaints of discrimination, discouraged employees from complaining about discrimination, and fired other individuals who similarly complained of discrimination, Plaintiff does not merely assert that a policy or custom exists but instead alleges facts from which, at least circumstantially, such a policy can be inferred.

Therefore, because the Court finds Defendants' arguments in support of their motion to dismiss Plaintiff's Sections 1981 and 1983 claims unpersuasive, the Court DENIES Defendants' motion to dismiss these claims.[11]

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss Plaintiff's claims under the NYSHL and NYCHRL is GRANTED; Defendants' motion to dismiss Plaintiff's claims under Title VII is DENIED; and Defendants' motion to dismiss Plaintiff's claims under Sections 1981 and 1983 is DENIED. This Memorandum and Order resolves Dkt. No. 39. (Dkt. No. 36 was resolved on November 6, 2013, Dkt. No. 50.)

---

[11] Issue preclusion may require dismissal of Plaintiff's claims under Sections 1981 and 1983 based on Plaintiff's prior action before the New York State Department of Human Rights. *See, e.g., De Cintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111 (2d Cir. 1987). Defendants did not raise this argument in their motion to dismiss.

In light of the resolution of the Defendants' motion that prompted the stay of discovery entered in this matter on October 2, 2013, the stay is hereby lifted and the matter is referred back to Magistrate Judge Andrew J. Peck for further general pre-trial proceedings.

SO ORDERED.

Dated: September 25, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge