USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 0 6 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anarosa Peguero-Miles,

                Plaintiff,

–v–

City University of New York, *et al.*,

                Defendants.

13-CV-1636

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Anarosa Peguero-Miles is a former employee of the State University of New York Manhattan Educational Opportunity Center ("MEOC").[1] She alleges that the individual who helped get her hired exhibited severe discriminatory animus towards her after she was hired and spearheaded a wide-ranging conspiracy to have her fired. Defendants move for summary judgment and provide extensive documentary evidence demonstrating a legitimate, non-discriminatory reason for their decision to terminate Plaintiff. In opposition, Plaintiff fails to counter Defendants' undisputed statement of facts and similarly fails to persuasively oppose Defendants' arguments in favor of summary judgment. Therefore, and as further explained below, the Defendants' motion for summary judgment is GRANTED.

I.    **LEGAL STANDARD**

    Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for

---

[1] Plaintiff named the MEOC and the City University of New York Borough of Manhattan Community College ("BMCC") as Defendants in her Complaint. While it appears that the MEOC employed Plaintiff, the exact legal structure of these two entities is unclear. In any event, the Court assumes for the purposes of this motion that either or both of these entities could be considered her employer.

1

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, a court views all evidence in the light most favorable to the non-movant, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. But "[e]ven where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001). Similarly, "summary judgment is proper where there is 'nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)).

## II. BACKGROUND

In her opposition to the Defendants' motion for summary judgment, Plaintiff failed to comply with Local Rule 56.1(b). Under that rule,

> [t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

Local Rule 56.1(b). Although Plaintiff is appearing *pro se*, the Court declines to excuse Plaintiff's failure to comply with the Local Rule for several reasons. First, Plaintiff received a copy of Local Rule 56.1(b) from the Defendants as part of their motion papers, and this copy of

the Local Rule emphasized the need for a counterstatement of material facts. Dkt. No. 82-1. Second, it appears from Plaintiff's opposition brief that she originally intended to submit a counterstatement, but inexplicably chose not to do so. Her opposition brief contains a crossed-out "Statement of Facts" section stating "[f]or a complete statement of the undisputed facts relevant to this opposition, the Court is referred to Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts, dated February 17, 2015, submitted herewith." Opp'n Br. at 4. Plaintiff drew several lines through this section and never submitted a Local Civil Rule 56.1 statement. Instead, Plaintiff attached a declaration to her opposition brief that lists 37 exhibits, including disorganized transcript pages from multiple hearings or depositions (it is unclear which),[2] that are appended to the declaration. Thus, it appears that Plaintiff was clearly aware of the Local Rule's requirements, but chose not to comply with them.

As this and other courts have recognized, "Federal Rule of Civil Procedure 56 does not require the Court 'to perform an independent review of the record to find proof of a factual dispute.'" *Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650 (AJN), 2014 U.S. Dist. LEXIS 33228, at *5 (S.D.N.Y. Mar. 12, 2014) (quoting *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)), *aff'd* No. 14-1561-cv, 2015 U.S. App. LEXIS 3478 (2d Cir. Mar 5, 2015) (summary order). "Therefore, the Court deems '[e]ach numbered paragraph in the statement of material facts set forth in [the Defendants' 56.1] statement admitted for purposes of the motion." *Id.* (citing Local Rule 56.1(c)).

Nevertheless, as in previous cases in which parties have failed to comply with Local Rule 56.1, the Court does not blindly accept Defendants' 56.1 Statement. *Id.* Rather, the Court cross-referenced the individually numbered paragraphs contained in Defendants' 56.1 Statement to ensure that they contain record citations that support the asserted fact. The Court accepts only those factual assertions that are "accompanied by citation to admissible evidence" that supports

---

[2] Plaintiff's opposition brief also routinely cites transcripts with the notation "Tr." but she rarely indicates which of the many transcripts at issue in this case she is referring to, some of which are included haphazardly as Exhibit 1 to her declaration. Dkt. No. 86-1. Thus, it was difficult if not impossible for the Court to identify which transcript she was referring to, much less find it in her exhibits.

the assertion. *Id.* at *6 (citing *F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 302 (S.D.N.Y. 2008)). In light of these procedural issues, the following facts are deemed admitted.

### A. Factual Background

The premise for Plaintiff's current suit, as stated in her Third Amended Complaint, is that Defendant Angela Rita-Farias, the Coordinator for Counseling Services at the MEOC, subjected her to numerous discriminatory remarks during her employment at the MEOC and, due to racial and national origin bias, spearheaded efforts to have her terminated after Plaintiff complained about these comments. Defendants counter Plaintiff's unsupported allegations with uncontroverted evidence of a legitimate, nondiscriminatory reason for Plaintiff's termination.

Around November 8, 2009, Plaintiff met Rita-Farias, a female of Puerto Rican descent, at the Intrepid Sea, Air, and Space Museum. SUF[3] ¶¶ 10-11. While at the Museum, Plaintiff informed Rita-Farias that she was unemployed and Rita-Farias asked Plaintiff for her resume, which Plaintiff provided to Rita-Farias via email the next day. SUF ¶¶ 12-15. At the time, Rita-Farias was the Coordinator for Counseling Services at the MEOC, which provides academic and professional training services to low-income New Yorkers. SUF ¶¶ 6, 9. About a month after meeting Plaintiff, Rita-Farias informed her that the MEOC was looking for a Job Developer for the Food Stamp Employment and Training ("FSET") program. SUF ¶ 16. After interviewing Plaintiff, Rita-Farias recommended Plaintiff to Rodney Alexander, the Executive Director of the MEOC at the time, for a temporary position as a Job Developer. SUF ¶ 8, 17. Alexander subsequently approved hiring Plaintiff as a Job Developer for the MEOC and she started her employment in December 2009, reporting initially to Rita-Farias. SUF ¶¶ 18-19.

Plaintiff's responsibilities included counseling MEOC students, placing students in jobs, and building relationships with community-based organizations and employers to identify suitable employment for the FSET candidates. SUF ¶ 20. Plaintiff's initial appointment to the MEOC was for a period of approximately four months; at the end of this period, the MEOC no

---

[3] SUF stands for Defendants' Local Rule 56.1 Statement of Undisputed Facts, Dkt. No. 82.

4

longer had funding for her position under the FSET program. SUF ¶¶ 21-22. To continue Plaintiff's employment, Defendants appointed her to another temporary position from April 5, 2010 through August 13, 2010. SUF ¶ 23. Plaintiff subsequently applied for and received a position as a Job Developer for the period beginning August 2, 2010 and ending June 30, 2011. SUF ¶ 25. After August 2010, Plaintiff reported to Steven Jacobs, Associate Director for Research and Development at the MEOC. Declaration of Alberto Rodriguez dated January 23, 2015 ("Rodriguez Decl.") Ex. DD (Declaration of Angela Rita-Farias dated January 23, 2015) at ¶ 15; Rodriguez Decl. Ex. BB (Declaration of Walida Najeullah dated January 23, 2015) at ¶¶ 11-13; Compl. at 15.

Around January 2011, Alexander began receiving complaints regarding confrontations and negative interactions between Plaintiff and her coworkers. SUF ¶ 26. On January 19, 2011, for example, Maria Constantinou, a Career Job Developer, complained to Alexander that Plaintiff was speaking negatively about her to an MEOC student. SUF ¶ 27. On February 9, 2011, Walida Najeeullah, Coordinator of Operations at the MEOC, received a written complaint from Robert Lewis, an MEOC security officer, regarding Plaintiff's hostile demeanor. SUF ¶ 28. Lewis described an incident involving Plaintiff in which he saw her shaking scissors she held in her hand in the direction of staff member Juan Rufino. SUF ¶ 28. When Lewis approached and asked if everything was alright, Plaintiff told him to mind his own business. SUF ¶ 28.

On February 10, 2011, Plaintiff had a meeting with Alexander, Jacobs, Najeeullah, Brown, and Paleski to discuss Plaintiff's complaints that she was not getting appropriate administrative support at the MEOC. SUF ¶ 39. However, contrary to allegations made in Plaintiff's Third Amended Complaint, Plaintiff did not state during this meeting that she felt that she was being treated unfairly or that her job was being affected by alleged unlawful discrimination. SUF ¶ 39.

On February 16, 2011, Najeeullah received a written complaint from Eric Neutuch, Coordinator of Strategic College Initiatives at the MEOC, reporting that he had witnessed Plaintiff yelling at Lewis in a "completely inappropriate" manner. SUF ¶ 29. Najeeullah

5

informed Alexander of Plaintiff's "outburst," stating that she had "again received complaints about [Plaintiff] and her inappropriate behavior." SUF ¶ 30.[4] On February 16, 2011, Neutuch complained to Alexander about Plaintiff's outburst during a video shoot at the MEOC. SUF ¶ 31.

On February 17, 2011, Carmel Paleski, Director of Academic Affairs, complained to Alexander about Plaintiff's behavior in the MEOC Resource and Computer Lab. SUF ¶ 32. In her email to Alexander, Paleski forwarded a complaint she received from Lawrence Williams, an MEOC Resource Lab employee, who complained that Plaintiff was talking loudly in the computer lab and her phone was constantly ringing in violation of lab rules. SUF ¶ 32. When Williams informed Plaintiff of his concerns, she refused to acknowledge him. SUF ¶ 32. Also on February 17, 2011, Lewis again complained to Najeeullah about Plaintiff's inappropriate behavior. SUF ¶ 33.

A week later, on February 24, 2011, Tanya Brown, Assistant Director of Academic Affairs, sent an email to Jacobs and Alexander regarding Plaintiff's disruptive behavior in the MEOC Resource Lab. SUF ¶ 34. In that email, Brown notes that she went into the computer lab and "watched [Plaintiff] take out [her cell] phone and begin dialing a number." SUF ¶ 34; Rodriguez Decl. Ex. O. In Brown's email to Jacobs and Alexander, she states: "As you know, we do not allow students to use their cell phones in the lab and we cannot have staff talking on their phones being disruptive to the students working in the lab." *Id.* The email further states that "[d]ue to the several incidents that have involved Ms. Peguero and various members of the Academic Affairs staff in the last few weeks, staff no longer feel comfortable addressing her and feel that she has created a hostile work environment for them." *Id.* Karen Berry, the Chapter Chair of Plaintiff's union, also received complaints regarding Plaintiff that she raised with Alexander and the union. SUF ¶ 36-37.

---

[4] Defendants cite an email from Najeeullah to Alexander dated February 16, 2011 to support this fact and they describe the email as Exhibit K to the Rodriguez Declaration. This appears to be a typographical error as the email is actually Exhibit J to the Declaration.

6

On February 24, 2011, Jacobs, who was Plaintiff's supervisor at the time, gave Plaintiff an overall "Satisfactory" evaluation but noted that Plaintiff "[s]hould develop a thicker skin to perceived slights." SUF ¶ 35.

On February 25, 2011, Alexander sent Plaintiff a memo detailing some of the complaints he had received and scheduled a meeting to allow Plaintiff an opportunity to respond to the complaints. SUF ¶ 40. Specifically, Alexander stated that "[t]he conduct described [in the memo] is disruptive to the orderly operation of the MEOC and has the potential to create conflict with your co-workers. I would like to meet with you to discuss the above and hear your side of the story." Rodriguez Decl. Ex. Q.

Even after the memo was sent, Alexander continued to receive complaints about Plaintiff's behavior. On March 1, 2011, for example, Colette Johnson sent an email to Alexander complaining that Plaintiff intervened while Johnson was speaking to a student and spoke to her in a rude manner, telling her to "back off" and "get out of here." SUF ¶ 42. On the same day, Rita-Farias informed Alexander of a complaint she had received from Christine Pedala, an MEOC Office Assistant, who complained that Plaintiff had "c[o]me to [her] desk and rudely told [her] that Mr. Jacobs told [Plaintiff] to bring . . . a student to [her]." Rodriguez Decl. Ex. S. Plaintiff replied to Pedala's questions "in a loud and hostile voice" that left Pedala "speechless" because it was "done in front of the student and Mr. Paul and Suzette Rivera. This [was] not the first time this interaction ha[d] occurred and [Pedala] felt that [she] should document [it]." Rodriguez Decl. Ex. S.

On March 3, 2011, Alexander and Najeeullah met with Plaintiff and her union representative, Alberto Munoz, to discuss MEOC's concerns regarding Plaintiff's behavior and to afford Plaintiff an opportunity to respond to the complaints. SUF ¶ 44. In Alexander's memo to Plaintiff following the meeting, he noted that, "[a]s outlined in my February 18, 2011 memorandum, several of your co-workers have expressed that your interactions with them[] at times have not been collegial, and that you have at times expressed yourself in a rude and confrontational manner. Nothing you said at our meeting addressed in any substantive way the

7

allegations." SUF ¶ 45; Rodriguez Decl. Ex. T. As a result of the complaints that Alexander received about Plaintiff, he decided not to reappoint her to her position as Job Developer effective June 30, 2011, and he placed her on paid administrative leave effect March 28, 2011. SUF ¶ 46. MEOC security escorted Plaintiff out of the building on March 28, 2011 while Plaintiff repeatedly yelled loudly, "Walida Najeeullah fired me," in front of MEOC staff and students. SUF ¶¶ 47-48. Najeeullah became concerned for her safety and sent a letter to building security requesting Plaintiff be banned from the entire building, but Alexander subsequently modified the restriction to be limited to the floors that MEOC occupied rather than the entire building. SUF ¶ 49-50.

In late March 2011, Plaintiff met with Iyana Titus, BMCC Affirmative Action Officer, and raised concerns of discrimination. SUF ¶ 51. Titus began an investigation, but she administratively closed the investigation after Plaintiff filed a similar complaint with the New York State Department of Human Rights ("DHR"). SUF ¶ 52. Alexander did not become aware of Plaintiff's complaint of discrimination to Titus until after he made the decision not to renew Plaintiff's appointment. SUF ¶ 53.

### B.  Procedural History

On March 22, 2011, Plaintiff filed a complaint of discrimination with the DHR alleging that the Defendants harassed her because of her age, race or color, national origin, and gender, and that they retaliated against her. SUF ¶ 54.[5] Following a three-day public hearing at which Plaintiff was represented by counsel, Administrative Law Judge Lilliana Estrella Castillo found Plaintiff's claims meritless. Specifically, Judge Castillo determined that Plaintiff failed to establish a claim of race, color, or national origin discrimination because Plaintiff did not show that Rita-Farias had any influence over Alexander's decision not to reappoint Plaintiff. SUF ¶ 57. She further found that Defendants presented legitimate, non-discriminatory reasons for not

---

[5] Defendants' 56.1 Statement indicates that the date was April 4, 2011, presumably based on an unsupported statement in the Administrative Law Judge's findings, Rodriguez Decl. Ex. Z at 1, but the actual complaint and other exhibits indicate that it was filed on March 22, 2011, Rodriguez Decl. Ex. X-Y.

reappointing Plaintiff. SUF ¶ 57. Judge Castillo also determined that Plaintiff failed to establish that Defendants created a hostile work environment, noting, for example, that Plaintiff's testimony regarding Rita-Farias's comments was "not credible." SUF ¶ 58. Finally, Judge Castillo determined that Plaintiff failed to establish a claim for retaliation because she did not produce evidence sufficient to show a "causal connection" between her alleged complaints and the MEOC's decision not to reappoint her. SUF ¶ 59. On September 28, 2012, the DHR adopted Judge Castillo's opinion and dismissed Plaintiffs' proceeding. SUF ¶ 60.

Plaintiff commenced this action on March 11, 2013. Dkt. No. 2. Following the filing of Plaintiff's Third Amended Complaint, Dkt. No. 13, Defendants moved to dismiss, Dkt. No. 36. In a Memorandum and Order dated September 25, 2014, the Court granted the motion in part and denied it in part. Dkt. No. 59. The Court granted Defendants' motion to dismiss Plaintiff's claims under the New York State Human Rights Law and New York City Human Rights Law because each of those laws contains election-of-remedies provisions that barred Plaintiff from bringing the claims in federal court after she had already brought them before the DHR. Dkt. No. 59 at 7. The Court denied Defendants' motion to dismiss Plaintiff's claims under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983 because, under the permissive Rule 12(b)(6) standard, the Court concluded that Plaintiff had stated a claim under these statutes. Following the completion of discovery, the Defendants moved for summary judgment. Dkt. No. 79. Although the motion was fully briefed on February 24, 2015, Dkt. No. 89, Plaintiff requested, and the Court granted, permission to file a sur-reply memorandum of law that was limited to providing information concerning Constantinou that Plaintiff failed to supply with her opposition papers. Dkt. Nos. 91, 95.

## III. DISCUSSION

As discussed in greater detail below, Plaintiff's claims under §§ 1981 and 1983 are precluded based on her prior state administrative proceedings addressing identical issues, and her remaining Title VII claims are meritless.

A.      **Plaintiff's Claims under §§ 1981 and 1983 Claims Are Precluded**

Before turning to the substance of Plaintiff's claims, the Court must determine whether her federal claims in this action are precluded because of the prior state administrative proceeding. Plaintiff's Title VII claims are not precluded because no state court reviewed the findings of the state administrative agency. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) (holding that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims"); *see also De Cintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 114 (2d Cir. 1987) (stating that *Elliott* "establishes the basic proposition that appellant is entitled to a trial *de novo* on his Title VII claim, since he did not seek state court review of the SDHR administrative proceedings adjudicated against him").

Plaintiff's §§ 1981 and 1983 claims are precluded, however, because, "[w]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Elliott*, 478 U.S. at 799 (citation omitted). New York courts would give conclusive effect "to an administrative agency's quasi-judicial determination when two basic conditions are met: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency in a prior proceeding; and (2) there was a full and fair opportunity to contest this issue in the administrative tribunal." *Jeffreys v. Griffin*, 801 N.E.2d 404, 407 (N.Y. 2003) (*citing Ryan v. N.Y. Tel. Co.*, 467 N.E.2d 487, 478 (N.Y. 1984)). And the Second Circuit has held, for example, that collateral estoppel applies to claims brought before the DHR. *De Cintio*, 821 F.2d at 118.

According to the verified complaint filed in the DHR, Plaintiff raised the exact same issues of discrimination, retaliation, and hostile work environment as raised in her Third Amended Complaint. SUF ¶¶ 54-60; Rodriguez Decl. Ex. Y. The administrative law judge received proposed findings of fact and conclusions of law from the parties and held a hearing at which witnesses testified. SUF ¶¶ 55; Rodriguez Decl. Ex. Z. Following this hearing, the

10

administrative law judge made conclusions of law finding that Plaintiff was not terminated for discriminatory reasons, was not subject to a hostile work environment, and was not retaliated against for filing complaints. SUF ¶¶ 57-59; Rodriguez Decl. Ex. Z. The administrative law judge reviewed the testimony of witnesses regarding Plaintiff's allegations that Rita-Farias used disparaging comments on a regular basis about Plaintiff's race, age, and national origin as well as the race and national origin of other MEOC staff. *Id.*

The administrative law judge's order indicates that the issues Plaintiff presented to the DHR and those presented here—discrimination on the basis of race and national origin, hostile work environment, and retaliation—are identical. Moreover, these issues were "obviously material to the DHR proceeding and 'essential to the decision rendered therein.'" *De Cintio*, 821 F.2d at 118 (quoting *Ryan*, 467 N.E.2d at 500). Thus, as in *De Cintio*, "[g]iven the foregoing, it is apparent that [Plaintiff] would be precluded under New York law from relitigating the [discrimination, hostile work environment, and] retaliation issue[s] brought before the SDHR." *Id.*

Plaintiff's only argument in response to the preclusion of her §§ 1981 and 1983 claims is that the "right to sue letter negates the collateral estoppel argument." Opp'n Br. at 14. But the right-to-sue letter pertains only to claims under Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act, not §§ 1981 or 1983. Nor is the Court aware of any other argument that Plaintiff could advance to avoid the preclusive effect of the DHR proceedings. In *Kosakow v. New Rochelle Radiology Associates, P.C.*, for example, the Second Circuit held that a prior DHR proceeding did not bar a plaintiff's federal law claims because plaintiff did not have a full hearing involving the presentation of witnesses on his claims, which were dismissed solely upon a review of the papers submitted. 274 F.3d 706, 730 (2d Cir. 2001). In contrast, Plaintiff had a full and fair opportunity to put on witnesses and question the Defendants' witnesses at the hearing held before the administrative law judge.

11

Therefore, Plaintiff's claims under §§ 1981 and 1983 are precluded. And even if Plaintiff's claims under §§ 1981 and 1983 were not precluded, they would be dismissed for the same reasons as her Title VII claims discussed in Part III.B. *See, e.g., Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

### B.     Title VII Claims

While Plaintiff's Title VII claims are not precluded, they are meritless. To begin with, "Title VII does not impose liability on individuals." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2010) (collecting cases). Thus, all of Plaintiff's Title VII claims against the individual Defendants—Alexander, Rita-Farias, and Najeeullah—are dismissed on this basis alone.

With respect to Plaintiff's employer, "[t]o withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting [analysis] laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1937)." *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). In short,

> a plaintiff first bears the "minimal" burden of setting out a *prima facie* discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.

*Id.* Applying this framework to Plaintiff's Title VII claims for discriminatory discharge (i.e., disparate treatment) and retaliation reveals that she cannot satisfy even the modest burden of establishing a *prima facie* case; regardless, Defendants offer legitimate, nondiscriminatory reasons that Plaintiff fails to show are pretextual. Her hostile work environment claim fails for the separate reason that she failed to point to evidence demonstrating a specific basis for imputing the conduct that created the allegedly hostile work environment to her employer.

#### 1.     Disparate Treatment

To establish a *prima facie* case of disparate treatment under Title VII, "Plaintiff 'must show that: 1) [s]he belonged to a protected class; 2) [s]he was qualified for the position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under

circumstances giving rise to an inference of discriminatory intent.'" *Kaur v. N.Y. City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). The Court assumes that Plaintiff belongs to a protected class, was qualified for her position as a Job Developer, and that Defendants failed to reappoint her to her position. But based on the facts that the Court deems admitted, Plaintiff's adverse employment action did not occur under circumstances giving rise to an inference of discriminatory intent and, even if they did, Defendants put forward legitimate, non-discriminatory reasons for Plaintiff's termination that Plaintiff fails to show are pretextual.

First, the Court concludes that the "same-actor inference" strongly undermines the fourth prong of Plaintiff's *prima facie* case. Courts have long recognized that

> [a]lthough each case must involve an examination of all the circumstances, some factors strongly suggest that invidious discrimination was unlikely. For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.

*Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *see also Whitting v. Locust Valley Cent. Sch. Dist.*, No. 10-cv-0742 (ADS)(ETB), 2012 U.S. Dist. LEXIS 152233, at *32 (E.D.N.Y. Oct. 22, 2012) (applying the same-actor inference in context of age discrimination) *Cooksey v. Hertz Corp.*, No. 00 CV 5921 (SJ), 2004 U.S. Dist. LEXIS 9135, at *6-7 (E.D.N.Y. Jan. 26, 2004) (applying the same-actor inference in context of race discrimination). Although Alexander, as the head of the MEOC, made the decision not to reappoint Plaintiff, Plaintiff lays the blame for her termination squarely on the shoulders of Rita-Farias, whom she contends conspired to have Alexander terminate her. (Plaintiff acknowledges that Alexander did not discriminate against her. Rodriguez Decl. Ex. C. (Peguero-Miles Depo. Tr. 128:9-17, Nov. 17, 2014)). Moreover, all the specific allegations of discriminatory animus stated in Plaintiff's Complaint are attributed to Rita-Farias, not Alexander or others at the MEOC. Similarly, Plaintiff's opposition brief states that "Angela Rita-Farias led the mission to get rid of plaintiff which was accomplished by the help of others who were in alliances with Angela Rita-Farias."

13

Opp'n Br. at 3. However, Plaintiff does not point to admissible evidence contradicting the fact that Rita-Farias encouraged Plaintiff to apply to the MEOC, interviewed her, and recommended her for a job at the MEOC. Instead, Plaintiff contends in her opposition to the motion for summary judgment that there were "multiple actors" who held discriminatory views of Plaintiff and who influenced her termination. But Plaintiff points to no admissible evidence to substantiate this contention, which also runs contrary to the allegations she made against Rita-Farias in her Complaint and in her opposition to the motion to dismiss.

Second, the admitted facts reveal no other circumstances that would give rise to a discriminatory intent. Defendants offered extensive, unrefuted documentation of multiple complaints from at least seven different individuals concerning Plaintiff's inappropriate behavior over the course of at least three months. As noted, Plaintiff's allegations of discriminatory animus concern Rita-Farias, yet the vast majority of the complaints made about Plaintiff came from other individuals. In addition, Alexander outlined complaints from these other individuals in his memo to Plaintiff on February 25, 2011, and he further testified that he decided not to reappoint Plaintiff to her position as Job Developer based on these complaints, undermining Plaintiff's contention that Rita-Farias encouraged or otherwise influenced Alexander's decision to terminate her.

Third, even assuming Plaintiff could establish a *prima facie* case of discrimination, the Defendants have offered legitimate, non-discriminatory reasons for her termination. As noted in the preceding paragraph and as discussed in the factual background, Alexander terminated Plaintiff because of complaints about her inappropriate behavior, a fact that Plaintiff failed to refute. This well-documented reason is sufficient to satisfy the Defendants' "burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128-29 (2d Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993)). Furthermore, Plaintiff fails to point to any admissible evidence that would suggest Alexander's reasons were pretextual.

Therefore, because Plaintiff fails to establish a *prima facie* case of discriminatory discharge, and because, even assuming she could establish a *prima facie* case, Defendants have satisfied their burden of producing evidence demonstrating Plaintiff was terminated for a legitimate, nondiscriminatory reason that Plaintiff fails to contend, much less show, was pretextual, Defendants are entitled to summary judgment on Plaintiff's claim for disparate treatment under Title VII.

### 2. Retaliation

"To establish a *prima facie* case of unlawful retaliation under Title VII, 'an employee must show that (1) [s]he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Rivera*, 743 F.3d at 24 (quoting *Lore*, 670 F.3d at 157). "The Supreme Court recently held that 'Title VII retaliation claims must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

Plaintiff appears to allege three possible bases for her retaliation claim. The first instance is her unsupported allegation that she was terminated in retaliation for a verbal complaint she made to Jacobs about Rita-Farias's discriminatory comments in August 2010. Peguero-Miles Tr. at 70:15-23. Plaintiff, however, was placed on administrative leave in March 2011—seven months later. It is true that plaintiffs may demonstrate "causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity." *Kwan*, 737 F.3d at 845. And, contrary to Defendants' suggestion, the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting the Second Circuit has "previously held that five months is not too long to find the causal relationship"). But here, where seven months elapsed between the

alleged protected activity and the adverse employment action, the Court finds that the inference of causation is exceedingly weak. Furthermore, the alleged complaint was not made to the decision maker who decided not to reappoint Plaintiff—Alexander—and there is no other evidence to suggest that Alexander was aware of the alleged protected activity.

The second and third instances are Plaintiff's unsupported allegations that she complained of discrimination directly to Alexander in February 2011 and separately to Titus in March 2011 before Alexander put her on administrative leave in March 2011. But according to the admitted facts on the record, Plaintiff never actually complained of discrimination at the meeting with Alexander in February 2011, SUF ¶ 39, she did not actually complain to Titus until late March 2011, *after* she had already suffered the adverse employment action, SUF ¶ 51,[6] and Alexander was unaware of her complaint to Titus at the time he decided not to reappoint her. SUF ¶ 53. Instead, the only support for Plaintiff's allegations of retaliation are her own self-serving statements, which are generally insufficient to survive summary judgment. *See, e.g., Rivera*, 743 F.3d at 20 (noting "summary judgment is proper where there is 'nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony.'" (quoting *Jeffreys*, 426 F.3d at 555)).

Regardless, as with Plaintiff's discriminatory discharge claim, "[u]nder the *McDonnell Douglas* framework, after the defendant has articulated a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture." *Kwan*, 737 F.3d at 845 (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). To survive the motion for summary judgment, "[t]he plaintiff must then come forward with evidence that the defendant's proffered, non-retaliatory reason is a mere pretext for retaliation." *Id.* As noted above, Defendants articulated and documented a non-retaliatory reason in the form of the numerous complaints that they received regarding Plaintiff's

---

[6] A letter from Titus to Plaintiff dated April 25, 2011 states that "[i]n *late March* you filed a complaint with my office alleging discrimination. Specifically, you complained that . . . Alexander . . . was trying to unlawfully discharge you." SUF ¶ 51; Rodriguez Decl. Ex. X.

16

behavior, which led to Alexander's decision not to reappoint Plaintiff. To establish pretext, "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action." *Id.* at 846. Plaintiff, however, has failed to provide an argument, much less point to admissible evidence, that would demonstrate any such weakness in Defendants' proffered legitimate reason for choosing not to reappoint her.

In sum, Plaintiff fails to establish a *prima facie* case of retaliation, and, furthermore, Defendants have articulated and offered unrefuted documentary evidence demonstrating a non-retaliatory reason for deciding not to re-appoint Plaintiff. And because Plaintiff has failed to come forward with evidence that the Defendants' proffered, non-retaliatory reason is a mere pretext for retaliation, the Defendants are entitled to summary judgment on Plaintiff's claim for retaliation under Title VII.

### 3. Hostile Work Environment

"In order to establish a claim for hostile work environment under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Rivera*, 743 F.3d at 20 (quoting *Gorzynski*, 596 F.3d at 102). In considering whether to grant summary judgment on such a claim, "courts should 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Id.* (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). In addition, Plaintiff must show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). As Judge Engelmayer explained,

17

> [t]he standards for assessing vicarious liability differ depending on the status of the alleged harasser. When a "supervisor" does the harassing, the conduct is attributable to the employer if (1) the supervisor takes a tangible employment action, or (2) the employer is unable to establish an affirmative defense by showing that it exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided.

*Brown v. City of New York*, No. 11 Civ. 2915 (PAE), 2013 U.S. Dist. LEXIS 101337, at *36 (S.D.N.Y. July 19, 2013) (citing *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2442 (2013)). In contrast, "[w]hen harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011)).

Rita-Farias was Plaintiff's supervisor from December 2009 to August 2010, after which Jacobs became Plaintiff's supervisor and Rita-Farias became a mere co-worker. Thus, it is unclear which of the two vicarious liability standards to apply. Even under the supervisor standard, however, Plaintiff has not produced evidence showing that Rita-Farias took a tangible employment action against Plaintiff while acting as Plaintiff's supervisor. Moreover, under either the supervisor standard or the co-worker standard, Defendants offered uncontroverted evidence that Plaintiff failed to take advantage of procedures for complaining about discrimination. Namely, Plaintiff did not bring the alleged discrimination to Alexander's attention *before* he decided not to renew her appointment. SUF ¶ 53. In fact, on February 10, 2011, Alexander and others met with Plaintiff to address her complaints that she was not getting appropriate administrative support at the MEOC, but she failed to indicate at this meeting that unlawful discrimination was affecting her job. SUF ¶ 39. And on March 3, 2011, Alexander gave Plaintiff an opportunity to respond to the numerous complaints about her unprofessional behavior, which provided another opportunity to bring the alleged discrimination to Alexander's attention as an explanation for the complaints, but Plaintiff instead offered laconic,

18

nonresponsive answers to the complaints and failed to inform him about the alleged discrimination. SUF ¶ 45.

The Court generously reviewed Plaintiff's many exhibits to try and find admissible evidence that Plaintiff actually took advantage of avenues available for making complaints about discrimination, or evidence that her employer was aware of the discrimination and yet did nothing to address it. The only evidence the Court could identify that is remotely relevant to this issue is an email exchange, which occurred after the March 3, 2011 meeting with Alexander, in which Plaintiff informed a union representative that she was contemplating filing a formal complaint, as well as an unsigned grievance form dated March 24, 2011. Declaration of Anarosa Peguero-Miles dated February 17, 2015 Exs. P, AA.[7] But Plaintiff failed to counter the Defendants' fact that the BMCC Affirmative Action Officer closed her investigation in its nascent stages because Plaintiff filed a complaint with the DHR on March 22, 2011, SUF ¶¶ 51-52 (citing Rodriguez Decl. Ex. X). In short, Plaintiff decided not to inform Alexander of the alleged discrimination at their February 10, 2011 or March 3, 2011 meetings, and she did not allow the Affirmative Action Officer's investigation to run its course before she went straight to filing a complaint with the DHR. Thus, the undisputed facts demonstrate that Alexander was unaware of the harassment at the time he made his decision not to reappoint Plaintiff and that Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities available to her.

### C.     Defamation Claim

Finally, Plaintiff's Third Amended Complaint asserted a claim for "defamation/slander." Third Am. Compl. at 9. To clarify, slander is a form of defamation. *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) ("'Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name.'" (quoting *Hogan v. Herald Co.*, 446 N.Y.S.2d 836, 839 (N.Y. App. Div.), *aff'd* 444 N.E.2d 1002 (1982))). Defendants moved to

---

[7] Plaintiff also frequently points to Exhibit H to her declaration, but this appears to be a blank calendar entry for February 25, 2011 labeled "PSC Union Meeting w/Anarosa: Disciplinary Meeting" that lacks any content.

dismiss all of Plaintiff's claims, including her claim for slander. Dkt. No. 40 at 11. In her opposition to the motion to dismiss, Plaintiff stated "PLEASE TAKE NOTICE that the plaintiff did not file a complaint of slander under New York State." Dkt. No. 45 at 16. In deciding the motion to dismiss, the Court understood Plaintiff's statement to mean that she did not intend to state a claim for slander. ECF No. 59 at 1 n.2. Moreover, Plaintiff did not offer any argument in opposition to Defendants' motion to dismiss relating to her slander claim, further indicating that the claim was abandoned. *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (Peck, M.J.) (collecting cases); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F Supp. 2d 131, 152 (D. Me. 2006); *see also Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 102-03 (E.D.N.Y. 2010) (collecting cases). For some reason, however, both parties discuss the slander claim in the motion for summary judgment briefs. But because Plaintiff earlier indicated that the claim was abandoned at the motion to dismiss stage, the Court concludes that summary judgment in favor of Defendants on this claim is warranted.

## IV. CONCLUSION

Therefore, for the reasons stated herein, Defendants' motion for summary judgment is GRANTED. This resolves Dkt. No. 79. The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is directed to enter judgment and close this case

SO ORDERED.

Dated: July 6, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge